# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

B.G,

Plaintiff,

v.

CITY OF PHILADELPHIA;
DETECTIVE OBIE HAZZARD (#642);
OFFICER DAVID BAKER (#8133);
OFFICER MARCUS BAKER (#5177);
DETECTIVE MAURIZIO (#604);
OFFICER MILLER (#1882);
OFFICER KOZLOWSKI (#3536);
OFFICER BILSKI (#8081);
DETECTIVE HOLMAN (#718);
DETECTIVE HAAG (#9229);
SUPERVISOR PAUL DRAINS JR.;
JOHN/JANE DOE CORRECTIONAL OFFICERS 1–20;
JOHN/JANE DOE MEDICAL PERSONNEL 1–20,

Defendants.

CIVIL ACTION NO. _____

COMPLAINT

## I. JURISDICTION AND VENUE

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.
2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.
3. This Court also has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3), because Plaintiff seeks redress for deprivations of constitutional rights committed under color of state law.
4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because all events giving rise to these claims occurred in Philadelphia, Pennsylvania.

## II. PARTIES

5. Plaintiff is an adult citizen of Pennsylvania. Plaintiff's address is on file with the Court.

6. Defendant City of Philadelphia is a municipal entity organized under the laws of Pennsylvania. At all relevant times, the City was responsible for the Philadelphia Police Department and the Philadelphia Department of Prisons.
7. Defendant Detective Obie Hazzard (#642) was, at all relevant times, a Philadelphia Police detective assigned to Southwest Detectives Division and acting under color of state law.
8. Defendant Officer David Baker (#8133) was, at all relevant times, a Philadelphia Police officer acting under color of state law.
9. Defendant Officer Marcus Baker (#5177) was, at all relevant times, a Philadelphia Police officer acting under color of state law.
10. Defendant Detective Maurizio (#604) was, at all relevant times, a Philadelphia Police detective acting under color of state law.
11. Defendant Officer Miller (#1882) was, at all relevant times, a Philadelphia Police officer acting under color of state law.
12. Defendant Officer Kozlowski (#3536) was, at all relevant times, a Philadelphia Police officer acting under color of state law.
13. Defendant Officer Bilski (#8081) was, at all relevant times, a Philadelphia Police officer acting under color of state law.
14. Defendant Detective Holman (#718) was, at all relevant times, a Philadelphia Police detective acting under color of state law.
15. Defendant Detective Haag (#9229) was, at all relevant times, a Philadelphia Police detective acting under color of state law.
16. Defendant Supervisor Paul Drains Jr. was, at all relevant times, a Philadelphia Police supervisor acting under color of state law.
17. Defendants John/Jane Doe Correctional Officers 1–20 were, at all relevant times, correctional employees, officers, supervisors, or agents responsible for Plaintiff's custody, safety, housing, and supervision while Plaintiff was confined.
18. Defendants John/Jane Doe Medical Personnel 1–20 were, at all relevant times, medical employees, contractors, agents, nurses, doctors, or medical staff responsible for Plaintiff's intake screening, medical records, medical care, and treatment.

## III. FACTUAL ALLEGATIONS

### A. Criminal Paperwork, Charges, and Arrest Warrant

19. Plaintiff was charged in Philadelphia Municipal Court under docket number MC-51-CR-0008527-2024.
20. The police district number listed on the paperwork is DC No. 24-16-012633.
21. The criminal complaint number listed on the paperwork is COM-0002249-2024.
22. The warrant control number listed on the warrant paperwork is WAR-0002249-2024.
23. The affidavit of probable cause lists AFF-0002249-2024.
24. The affiant on the affidavit of probable cause was Defendant Detective Obie Hazzard (#642), Southwest Detectives Division.
25. The criminal complaint states that it was reviewed and approved by ADA Keion Cook.
26. The warrant was issued on May 4, 2024, by Emergency Arraignment Court Magistrate Elizabeth Canapary.

27. The affidavit alleged an incident on or about April 15, 2024, at or around the 3500 block of Mount Vernon Street, Philadelphia, Pennsylvania.
28. The complainant listed in the police paperwork was B.C.
29. The charges listed against Plaintiff were:
    a. Aggravated Assault, 18 Pa.C.S. § 2702, graded F1;
    b. Strangulation, 18 Pa.C.S. § 2718, graded F2;
    c. Simple Assault, 18 Pa.C.S. § 2701, graded M2; and
    d. Recklessly Endangering Another Person, 18 Pa.C.S. § 2705, graded M2.
30. Plaintiff denies assaulting, strangling, punching, kicking, choking, threatening, or injuring B.C.
31. Plaintiff alleges that material allegations in the affidavit of probable cause were false, misleading, unsupported, and/or made with reckless disregard for the truth.

B. Facts Shown by the Affidavit Itself

32. The affidavit alleged that officers were told the complainant had a bleeding mouth, blood on her forehead, swelling, neck pain, loss of consciousness, and a knocked-out tooth.
33. The affidavit alleged that Plaintiff accused the complainant of lying about being with her sister, kicked in a bathroom door, punched her, choked her, knocked her to the floor, caused her to lose consciousness, and kicked and punched her after she regained consciousness.
34. Plaintiff alleges those accusations were false.
35. The affidavit itself reflects that the complainant did not meaningfully cooperate with follow-up investigation.
36. The affidavit states that Detective Hazzard called Presbyterian Hospital on April 16, 2024, and learned the complainant had been released.
37. The affidavit states that Detective Hazzard attempted to call the complainant on April 17, 2024, with negative results.
38. The affidavit states that Detective Hazzard reached the complainant on April 18, 2024, but the complainant allegedly spoke in a very low voice, stated it was not a good time to talk, and abruptly hung up.
39. The affidavit states that Detective Hazzard called back to leave contact information, but no calls were returned.
40. The affidavit states that Detective Maurizio called on April 18 and April 19, 2024, and left voice messages with no response.
41. The affidavit states that on April 22, 2024, Detective Hazzard went to the complainant's residence to conduct an interview, but the effort produced negative results.
42. The affidavit states that Detective Hazzard later spoke with the complainant by phone and that she said she was heading out for a job interview but would call within the hour.
43. The affidavit states that Detective Hazzard waited approximately one and a half hours and then called the complainant's mother.
44. The affidavit states that the complainant's mother refused to give her name but said she would contact her daughter and have her contact Southwest Detectives to be interviewed.
45. The affidavit states that Detective Hazzard had not received correspondence from the complainant as of that date.

46. The affidavit states that on April 23, 2024, Detectives Hazzard and Maurizio went to the complainant's residence, knocked on the door, and received negative results.

47. The affidavit states that the complainant later told detectives by phone that she was not home but would meet them at Southwest Detectives at 11:30 a.m. on April 23, 2024.

48. The affidavit states that detectives surveyed the residence and surrounding area, returned to Southwest Detectives, and waited for the complainant, but she never showed up.

49. Despite those facts showing lack of cooperation, lack of a completed interview, lack of a sworn follow-up statement, and lack of corroborating evidence, Defendants still obtained a warrant and caused Plaintiff to be arrested.

50. The affidavit does not identify any sworn follow-up statement from the complainant after the alleged incident.

51. The affidavit does not identify any independent eyewitness who saw Plaintiff assault the complainant.

52. The affidavit does not identify any forensic evidence connecting Plaintiff to the alleged assault.

53. The affidavit does not attach, quote, or identify any medical record proving that Plaintiff caused the alleged injuries.

54. The affidavit does not identify any recorded interview of Plaintiff.

55. Plaintiff was never contacted, questioned, interviewed, or asked for his side before the warrant was issued.

56. The affidavit states that computer checks were conducted and that police used PennDOT, BMV/criminal history, and JNET information to identify Plaintiff.

57. Plaintiff alleges that reliance on database information and generalized description did not cure the lack of reliable probable cause, lack of complainant cooperation, and lack of corroboration.

C. Arrest, Bail, and Detention

58. Plaintiff was arrested on May 6, 2024, at approximately 12:11 a.m.

59. The arrest report lists the arrest type as "WA," meaning warrant arrest.

60. The arrest report lists the arrest location as the 3500 block of Mount Vernon Street.

61. The arrest report identifies Officer David Baker (#8133) as the arrest report officer.

62. The arrest report identifies Supervisor Paul Drains Jr., payroll number 250218, as approving the arrest report.

63. The arrest report lists Detective Obie Hazzard (#642) and Officer Marcus Baker (#5177) among police personnel.

64. The preliminary arraignment report lists the preliminary hearing date as May 21, 2024, in Room 703.

65. Bail was set at $75,000 plus special conditions.

66. The preliminary arraignment report states that Plaintiff was committed to jail in lieu of bail.

67. Plaintiff was initially processed through police custody and then confined at Curran-Fromhold Correctional Facility ("CFCF") on State Road.

68. Plaintiff remained incarcerated for approximately one month.

69. At the first hearing date, on or about May 21, 2024, the Commonwealth declined to prosecute the charges.

70. The criminal proceedings terminated in Plaintiff's favor.

71. Plaintiff alleges that the prosecution's refusal to proceed confirms that the charges lacked evidentiary support.

72. Plaintiff alleges that Defendants, acting under color of law, deprived Plaintiff of his constitutional rights and maliciously prosecuted him by causing him to be arrested, jailed, and prosecuted despite knowing, or recklessly disregarding, that the affidavit lacked reliable probable cause. Plaintiff further alleges that Defendants falsely represented, or fabricated the manner in which they allegedly identified Plaintiff as the suspect, including their claimed reliance on database searches, identification procedures, and investigative methods. Plaintiff alleges that Defendants knew, or recklessly disregarded, that the information used to identify him as the alleged offender was unreliable, inaccurate, misleading, or unsupported by a proper investigation, and nevertheless used those representations to obtain a warrant, justify his arrest, and initiate criminal proceedings against him.

D. Medical Condition and CFCF Intake

73. At the time of incarceration, Plaintiff had a serious medical condition involving a tumor on his left buttock requiring surgical follow-up.

74. Plaintiff possessed medical documentation concerning a scheduled surgical appointment and his medical condition.

75. Plaintiff informed intake and medical staff that he had this documentation with him when he was forced into custody.

76. At intake, medical staff observed Plaintiff's condition and requested the medical documentation.

77. Plaintiff alleges that correctional staff initially discarded, misplaced, or failed to preserve the medical documentation.

78. The documentation was later recovered in a crumpled and wrinkled condition.

79. Plaintiff alleges the condition of the documentation showed that it had been discarded or mishandled.

80. Plaintiff alleges that the intake area and the handling of his medical paperwork are captured on camera.

81. Despite the known medical condition and the recovery of the documentation, Defendants failed to schedule follow-up care, failed to transport Plaintiff for outside medical treatment, failed to provide specialty care, and failed to provide meaningful treatment for the tumor.

E. Unsafe Conditions, Toxic Exposure, and Failure to Protect

82. Plaintiff was placed in a general intake/quarantine housing unit at CFCF.

83. Plaintiff was housed with multiple inmates during his confinement.

84. Plaintiff alleges that inmates in the housing unit smoked unknown chemical substances that produced strong and harmful fumes.

85. Plaintiff alleges those substances caused inmates to act erratically, hallucinate, become aggressive, and become violent.

86. Plaintiff asked inmates to stop smoking the chemical substances.

87. Plaintiff became physically ill from the exposure.

88. Plaintiff suffered severe headaches, throat irritation, throat inflammation, loss of voice, respiratory symptoms, and general illness.

89. Plaintiff alleges that correctional officers failed to adequately monitor the housing unit.

90. Plaintiff alleges that correctional officers failed to protect Plaintiff from dangerous housing conditions and violent inmates.

91. Plaintiff alleges that he was assaulted by another inmate while confined.

92. Plaintiff alleges that he was threatened with being stabbed or seriously harmed if he reported the assaults.

93. Plaintiff filed grievances and submitted medical requests concerning unsafe conditions and medical problems.

94. Plaintiff alleges that his grievances, medical requests, and sick-call requests were ignored, denied, or inadequately addressed.

95. Plaintiff alleges that Defendants failed to provide medical care for the symptoms caused by chemical exposure.

96. Plaintiff alleges that Defendants failed to protect him from known and obvious risks of harm.

F. Monell

97. Plaintiff states that the constitutional violations described above were caused by policies, customs, practices, failures to train, failures to supervise, failures to discipline, and deliberate indifference attributable to the City of Philadelphia.

98. The City failed to adequately train and supervise police officers and detectives regarding probable cause, truthful warrant affidavits, complainant non-cooperation, investigation of exculpatory evidence, and constitutional limits on arrests.

99. The City failed to adequately supervise and discipline officers who submit deficient or misleading affidavits of probable cause.

100.    The City failed to maintain adequate policies and practices to prevent arrests based on unreliable, uncorroborated, and non-cooperative allegations.

101.    The City failed to provide constitutionally adequate medical intake, medical continuity of care, and treatment for serious medical needs in its correctional facilities.

102.    The City failed to adequately protect detainees from unsafe housing conditions, toxic exposure, inmate violence, and retaliation for reporting dangerous conditions.

103.    The City failed to maintain an effective grievance and sick-call system capable of protecting detainees from continuing harm.

104.    These policies, customs, practices, and failures were the moving force behind Plaintiff's injuries.

IV. CLAIMS FOR RELIEF

COUNT I
FALSE ARREST / UNLAWFUL SEIZURE
42 U.S.C. § 1983 – FOURTH AMENDMENT
Against Individual Police Defendants

105. Plaintiff incorporates all preceding paragraphs.

106. Defendants caused Plaintiff to be arrested without probable cause.

107. Defendants knew, or should have known, that the affidavit lacked reliable probable cause because the complainant failed to meaningfully cooperate, failed to appear for a follow-up interview, failed to return calls, and because the allegations lacked adequate corroboration.

108. Plaintiff's arrest constituted an unreasonable seizure under the Fourth Amendment.

109. As a direct and proximate result, Plaintiff suffered loss of liberty, incarceration, emotional distress, reputational harm, and other damages.

COUNT II
MALICIOUS PROSECUTION
42 U.S.C. § 1983 – FOURTH AMENDMENT
Against Individual Police Defendants

110. Plaintiff incorporates all preceding paragraphs.

111. Defendants initiated or caused criminal proceedings to be initiated against Plaintiff.

112. The proceedings were initiated without probable cause.

113. Defendants acted maliciously, knowingly, intentionally, or with reckless disregard for Plaintiff's constitutional rights.

114. The criminal proceedings terminated in Plaintiff's favor when the Commonwealth declined to prosecute at the first hearing date.

115. Plaintiff suffered a deprivation of liberty, including arrest, bail restrictions, and incarceration.

116. Defendants' conduct violated Plaintiff's Fourth Amendment rights.

COUNT III
FABRICATION OF EVIDENCE / MISLEADING AFFIDAVIT
42 U.S.C. § 1983 – FOURTH AND FOURTEENTH AMENDMENTS
Against Detective Hazzard and Participating Police Defendants

117. Plaintiff incorporates all preceding paragraphs.

118. Defendants included or relied upon material allegations in the affidavit that Plaintiff alleges were false, misleading, unsupported, or made with reckless disregard for the truth.

119. Defendants omitted material facts undermining probable cause, including the complainant's lack of meaningful cooperation and the lack of reliable corroboration.

120. The affidavit caused Plaintiff's arrest, prosecution, and incarceration.

121. Defendants' conduct violated Plaintiff's rights under the Fourth and Fourteenth Amendments.

COUNT IV
FAILURE TO INTERVENE

42 U.S.C. § 1983
Against Individual Police Defendants

122. Plaintiff incorporates all preceding paragraphs.
123. Defendants had a reasonable opportunity to prevent or correct the constitutional violations described above.
124. Defendants failed to intervene to prevent Plaintiff's unlawful arrest, prosecution, and detention.
125. Defendants' failure to intervene caused Plaintiff injury.

COUNT V
DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS
42 U.S.C. § 1983 – FOURTEENTH AMENDMENT
Against John/Jane Doe Correctional Officers and John/Jane Doe Medical Personnel

126. Plaintiff incorporates all preceding paragraphs.
127. Plaintiff had a serious medical need involving a tumor requiring surgical follow-up.
128. Defendants were aware of Plaintiff's serious medical condition and medical documentation.
129. Defendants failed to preserve and properly process Plaintiff's medical documentation.
130. Defendants failed to provide follow-up care, specialist care, transport, treatment, or meaningful medical evaluation.
131. Defendants ignored or inadequately addressed Plaintiff's medical requests and sick-call complaints.
132. Defendants acted with deliberate indifference to Plaintiff's serious medical needs.
133. Plaintiff suffered physical injury, pain, medical risk, emotional distress, and other damages.

COUNT VI
FAILURE TO PROTECT
42 U.S.C. § 1983 – FOURTEENTH AMENDMENT
Against John/Jane Doe Correctional Officers

134. Plaintiff incorporates all preceding paragraphs.
135. Plaintiff faced substantial risks of serious harm from toxic exposure, violent inmates, threats, and unsafe housing conditions.
136. Defendants knew or should have known of those risks.
137. Defendants failed to adequately monitor the housing unit, intervene, protect Plaintiff, or respond to dangerous conditions.
138. Plaintiff was assaulted, threatened, and exposed to harmful substances.
139. Defendants violated Plaintiff's Fourteenth Amendment rights.

COUNT VII
UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT

42 U.S.C. § 1983 – FOURTEENTH AMENDMENT
Against John/Jane Doe Correctional Officers and City of Philadelphia

140. Plaintiff incorporates all preceding paragraphs.
141. Plaintiff was subjected to unsafe and unconstitutional conditions of confinement, including exposure to toxic chemical fumes, lack of supervision, unsafe housing conditions, inmate violence, and inadequate medical response.
142. These conditions caused physical illness, respiratory symptoms, emotional distress, and physical injury.
143. Defendants acted with deliberate indifference to the conditions and risks.

COUNT VIII
MUNICIPAL LIABILITY
MONELL CLAIM
Against City of Philadelphia

144. Plaintiff incorporates all preceding paragraphs.
145. Defendant City of Philadelphia is liable under 42 U.S.C. § 1983 because its policies, customs, practices, failures to train, failures to supervise, failures to discipline, and deliberate indifference caused the constitutional violations described in this Complaint.
146. The City's police-related failures included failure to train and supervise officers regarding probable cause, truthful affidavits, complainant non-cooperation, reckless investigation, and arrests based on uncorroborated allegations.
147. The City's correctional failures included failure to provide constitutionally adequate medical care, failure to preserve medical records, failure to provide continuity of care, failure to respond to sick calls and grievances, failure to supervise housing units, and failure to protect detainees from toxic exposure and inmate violence.
148. These failures were the moving force behind Plaintiff's false arrest, malicious prosecution, detention, medical neglect, unsafe confinement, and resulting injuries.

V. DAMAGES

149. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including but not limited to:

a. loss of liberty;
b. incarceration;
c. emotional distress;
d. humiliation;
e. reputational harm;
f. physical illness;
g. pain and suffering;
h. medical harm;
i. fear, anxiety, and trauma;

j. financial loss; and

k. other damages to be determined at trial.

VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor and against Defendants and award:

A. Compensatory damages in an amount to be determined at trial;

B. Punitive damages against the individual Defendants;

C. Declaratory relief declaring that Defendants' conduct violated Plaintiff's rights under the Fourth and Fourteenth Amendments;

D. Injunctive relief requiring Defendants to preserve all evidence relevant to this action, including body-camera footage, arrest records, warrant materials, detective notes, CFCF intake footage, housing-unit footage, medical records, grievance records, sick-call records, officer rosters, housing logs, and internal communications;

E. Injunctive relief requiring Defendant City of Philadelphia to identify and preserve records sufficient to determine the names and roles of all John/Jane Doe correctional officers and medical personnel involved in Plaintiff's intake, housing, medical care, grievance handling, and supervision;

F. Costs and allowable fees under 42 U.S.C. § 1988;

G. Pre-judgment and post-judgment interest where permitted by law;

H. Such other and further relief as this Court deems just and proper.

B.G
Plaintiff, Pro Se


Date:06-14-2026